1

2

3

4

5

6 **UNITED STATES DISTRICT COURT**

7 **DISTRICT OF NEVADA**

8

9  UNITED STATES OF AMERICA,                    Case No. 2:12-cr-400-JAD-GWF

10                    Plaintiff,

11  vs.                                          **Order Denying Motion to Revoke the
                                                 Detention Order and Set Bond in Light
12  THOMAS A. CECRLE et al.,                     of Changed Circumstances [Doc. 115]**

13                    Defendants.

14

15         Currently before the Court is Defendant Thomas Cecrle's Motion to Revoke the Detention

16  Order and Set Bond in Light of Changed Circumstances, filed on October 3, 2013.  Doc. 115.  On

17  October 15, 2013, the Government filed a Response.  Doc. 120.  On October 18, 2013, Defendant

18  filed a Reply.  Doc. 122.  In effect, Defendant seeks to reverse District Judge Gordon's order, Doc.

19  100, in which he declined to revoke the detention order that Magistrate Judge Hoffman entered and

20  later declined to reconsider.  Docs. 29, 73.  This is Mr. Cecrle's third effort to have his detention

21  order revoked—an effort his Court now rejects.

22                                              **I.**

23                                       **BACKGROUND**

24         On October 24, 2012, Mr. Cecrle was indicted along with five other defendants on twenty

25  counts including Conspiracy to Commit Mail and Wire Fraud, Securities Fraud, and Conspiracy to

26  Commit Money Laundering, to Engaging in Money Transactions with Property Derived from

27  Specified Unlawful Activity.  Doc. 1.  A jury trial is currently scheduled for March 4, 2014.  Doc.

28  109.

1    On November 2, 2012, Mr. Cecrle appeared before the Magistrate Judge for his initial

2    appearance and detention hearing.  Doc. 24.  The Magistrate Judge found clear and convincing

3    evidence that Cecrle is a danger to the community and a preponderance of the evidence that he is a

4    flight risk, and ordered he be detained pending trial:

> Based on the information as set forth in the government's proffer, as
> well as the information provided to the Court by Pretrial Services, the
> Court finds the defendant poses a substantial risk of danger to the
> community and a substantial risk of nonappearance. The defendant
> lacks property, financial or employment ties to the community. The
> defendant's prior criminal history record reflects two prior felony
> convictions, eight prior misdemeanor convictions, seven prior failures
> to appear, and two probation violations or revocations.  Additionally,
> the Pretrial Services Report indicates that the defendant frequently
> uses methamphetamine socially.  The Court finds there are no
> conditions or combination of conditions that the Court could fashion at
> this time that would reasonably protect the community against the risk
> of danger posed by the defendant or assure the defendant's appearance
> at future court proceedings, accordingly, the defendant is ordered
> detained pending trial.

13   Doc. 29 at 2.

14   On December 28, 2012, Cecrle moved to reopen his detention hearing, claiming that "new"

15   information justified his release: (1) he had made arrangements to live in his oldest daughter's

16   apartment in Henderson where he can help care for her one-year old child, and (2) he could also

17   occasionally stay with his mother whose deteriorating health necessitates his help.  Doc. 58 at 4.  The

18   Magistrate Judge was "not persuaded that" this information was "new and material" and denied the

19   motion.  Doc. 73 at 2-4.  Cecrle appealed that decision to the district court under 18 U.S.C. §

20   3145(b), which allows for district court review of a magistrate judge's detention order, arguing that

21   the community-ties information presented by the request to reopen the detention hearing show "there

22   are circumstances that would reasonably ensure the safety of the community, as well as Mr. Cecrle's

23   presence at any future hearings," and asking the court to 'balance these facts' against the claim that

24   Mr. Cecrle's incarceration is complicating his access to his electronically stored discovery materials

25   and the computers necessary to view them.  Doc. 85 at 2-3.

26   On May 7, 2013, District Judge Gordon rejected Mr. Cecrle's challenge.  Doc. 100.  The

27   Court evaluated the motion under 18 U.S.C. § 3145(b) and found that none of the information

28   offered was truly new but, "more importantly," "these arguments and evidence and the suggestions

2

1  of less restrictive pretrial alternatives, are not persuasive." Doc. 100 at 5.  This case was transferred

2  to the undersigned on August 14, 2013, upon appointment to the district court bench.

3         With a new judge on the case, on October 3, 2013, Cecrle made a third run at

4  reconsideration, retreading his § 3145(b) argument with the instant Motion to Revoke the Detention

5  Order and Set Bond, in Light of Changed Circumstances.  Doc. 115.  The "changed circumstances"

6  he points to are: his ability to reside with his daughter in her apartment in Henderson, his recent

7  epiphany regarding "the importance of maintaining a life free from the abuse of drugs and other

8  intoxicants" that were primarily responsible for "the 20 substance and traffic related offenses"—nine

9  of which "involved either contempt or failures to appear," and the "disadvantage[]" that his

10  incarceration has placed on his ability to review the discovery related to his case—which primarily

11  consists of computer disks that must be reviewed using the detention facility's limited computer

12  resources ands which have apparently disappeared as the facility reports it has only one disk out of

13  the dozens that Cecrle claims were originally delivered to him.  Docs. 115, 151-3.

14         The government opposes the motion arguing in its response brief, "[p]ut simply, Cecrle is

15  attempting to retread worn-out arguments that have been repeatedly rejected by the Court.  In so

16  doing, he invites endless reviews of the Detention Order without raising any new and material

17  evidence."  Doc. 120 at 7-8.  This Court heard oral argument on the motion[1] on December 18, 2013,

18  and directed counsel for Cecrle and the government to contact the detention facility to determine if

19  additional access to computers and better security for Mr. Cecrle's discovery materials can be

20  provided.  Doc. 150.  Defense counsel did not contact the facility; the government did, however, and

21  in its supplemental opposition, the government represented that the detention center "could afford

22  the defendant up to 5 or 6 hours of terminal access per day, basing this number on representations

23  that he requires this amount of time to review discovery," and "defendant's discovery materials can

24  be secured by his counselor and accessed upon the defendant's request."  Doc. 151 at 3.

25  . . .

26

27

28
_____
        [1] A follow-up hearing was conducted on January 2, 2014.

## II.

### DISCUSSION

Like his last motion that prompted Judge Gordon's Order denial of his "appeal," Cecrle's instant motion is brought under 18 U.S.C. § 3145(b), which allows a person who is ordered detained by a magistrate judge to file a motion for revocation or amendment of the order.  18 U.S.C. § 3145(b).[2]  He baldly asserts that he "is permitted to file this motion for revocation . . . pursuant to Title 18 U.S.C. § 3145(b)" and review the detention order "again in light of the current circumstances on a *de novo* basis."  Doc. 115 at 6.  "Most importantly," he argues, "§ 3142(i) permits the Court to temporarily release Mr. Cecrle to the custody of another person to the extent that the Court determines such release to be necessary for defense preparation, or some other compelling reason."  *Id.*

Title 18 U.S.C. § 3142(g) requires the court to consider four factors in determining whether to detain or release a defendant: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released."  *United States v. Chen*, 820 F. Supp. 1205, 1207 (N.D. Cal. 1992).  The district court's review of a magistrate judge's detention order is performed under a de novo standard of review.  *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990).  "The district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."  *Id*. 1193.  Instead, "[i]t should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference."  *Id.*

---

[2] As the statute allows "***a*** motion" and not multiple motions for review of the magistrate's detention order, the Court's authority to revisit this order *yet again* under § 3145(b) is uncertain.  *See* 18 U.S.C. § 3145(b) (emphasis added).  The proper vehicle for Cecrle to raise these issues is more properly 18 U.S.C. § 3142(f), which allows the magistrate judge to reopen the detention hearing "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  Nevertheless, in the interest of justice and to expedite resolution of these issues, this Court will review this motion under § 3145(b) as argued by Cecrle.

4

1  The district court has already once reviewed—and affirmed—the Magistrate Judge's

2  detention order and the order denying his motion to reopen the detention hearing.  Doc. 100.  Having

3  reviewed the prior proceedings and decisions in this regard de novo, this Court now finds that Mr.

4  Cecrle's retread request fails to demonstrate that his current circumstances justify revocation or

5  amendment of the prior detention decisions.

6  **A.    Cecrle's Family Circumstances and Trial Preparation Issues are Not New.**

7  The primary defect in Cecrle's instant motion is that it identifies no truly new or changed

8  circumstances that were not already known at the time of the detention order or already considered

9  and rejected by the district court.  Cecrle first touted the strength of his community ties and the

10  potential for him to reside at his daughter's Henderson apartment in his original motion before the

11  Magistrate Judge to reopen the detention hearing.  *See* Doc. 58 at 4.  Those considerations were not

12  persuasive to either the Magistrate Judge or District Judge Gordon who denied Cecrle's first §

13  3145(b) challenge, and they have not become more persuasive with repetition or time.[3]

14  Cecrle's purported difficulties in preparing for trial are also not a new development.  In his

15  first § 3145(b) motion before Judge Gordon, Cecrle argued that he was not being "permitted access

16  to his discovery, or the computer with which he could review it."  Doc. 85 at 3.  And he notes in the

17  instant motion that he first started receiving his discovery materials a full year ago and restrictions

18  commenced "[s]oon afterward."  Doc. 115 at 5.  Thus, he was well aware of these problems with his

19  discovery materials before filing his first § 3145(b) motion.  Judge Gordon apparently did not find

20  these claims persuasive for detention revocation.  Cecrle attempts to up the ante in this motion (more

21  so in his reply) by suggesting that his limited computer access and loss of his copies of discovery

22  materials "places an impermissible burden on Mr. Cecrle's Fifth Amendment right of access to the

23  courts, and his Sixth Amendment right to counsel."  Doc. 122 at 3.  Neither the invocation of these

24  constitutional provisions nor his claimed drug-free reformation, however, justifies revocation or

25

26  _____

27  [3] *See* Doc. 100 at 4-5 (citing Cecrle's convictions for at least 10 state-court offenses, repeated probation violations, seven failures to appear, decade-long unemployment, and apparent absence of financial resources, all of which this Court finds remain compelling reasons to deny revocation or

28  amendment of the detention order).

5

1   amendment of the pretrial detention order.

2   **B.    Cecrle's Other Arguments Fail to Justify Revocation or Amendment of the Detention
3           Order.**

4           Cecrle's newly adopted drug-free lifestyle and purported difficulties in reviewing the

5   discovery in his case do not offer any basis for amending or revoking the detention order because

6   they have no material bearing on the legal considerations that went into the detention decision.

7   Cecrle offers the contention that he has gone through a reformation while in custody and has now

8   rejected the drug lifestyle that led to his numerous state court convictions, failures to appear, and

9   probation violations, presumably to persuade the court that his two-decade-long "history relating to

10  drug and alcohol abuse, criminal history, [and] record concerning appearance at court proceedings"

11  should now be ignored. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).  Although

12  relevant, when balanced against decades of established conduct illustrative of flight risk and

13  community danger, Cecrle's reformation (apparently achieved within the months following his first §

14  3145(b) motion) does not alone undermine the soundness of the conclusion that his detention

15  is—and remains—appropriate.

16          In addition to not being new, Cecrle's claim that his pretrial detention is hampering his ability

17  to help his counsel prepare for trial also fails to justify his release.  Cecrle does not even attempt to

18  demonstrate that his limited access to the detention facility's computer and the disappearance of his

19  discovery materials has some relationship to assuring his appearance for trial or the safety of the

20  community.[4]  Instead he suggests that § 3142(i) permits the Court to temporarily release him to

21  another person "to the extent that the Court determines such release to be necessary for defense

22  preparation, or some other compelling reason."  Doc. 115 at 6.  Because it appears from the

23  information provided in the government's supplement (uncontested by Defendant) that, with

24  instructions from the Court, the detention center will afford Cecrle computer access of the duration

25

26          _____

27          [4]The Magistrate Judge found that  Defendant's "prior criminal history record reflects two prior
    felony convictions, eight prior misdemeanor convictions, seven prior failures to appear, and two
    probation violations or revocations.   Additionally, the Pretrial Services Report indicates that the
28  defendant frequently uses methamphetamine socially."   Doc. 29 at 2.

1  he claims to require and assist in the safekeeping of his discovery materials, pretrial release is not

2  "necessary" for preparation of his defense or another compelling reason.

3         *1.  Defendant's pretrial release is not warranted under § 3142(i).*

4         Courts considering whether pretrial release is "necessary" under § 3142(i) have considered:

5  (1) the time and opportunity the defendant has to prepare for the trial and participate in his defense,

6  (2) the complexity of the case and volume of information, and (3) expense and inconvenience

7  associated with preparing while incarcerated.  *United States v. Buswell*, 2013 WL 210899 *6-7

8  (W.D. La. Jan. 18, 2013); *United States v. Dupree*, 833 F. Supp. 2d 241, 249 (E.D.N.Y. 2011),

9  *United States v. Persico*, 1986 WL 3793 *2 (S.D.N.Y. Mar. 27, 1986).  A consideration of these

10  factors does not demonstrate the necessity of Cecrle's release for trial preparation.

11         In his moving papers Cecrle acknowledges that he began receiving his discovery materials,

12  including 54 compact disks, a full year ago.  Doc. 115 at 5.  He complains that the guards kept his

13  disks behind glass and distributed them to him randomly and that some of the disks disappeared and

14  were seen floating around to other inmates.  *Id*.  He further asserts that his review of these materials

15  was limited by the fact that he has to share his unit's computer and "if another inmate had logged

16  onto the computer, say when Mr. Cecrle used the shower, Mr. Cecrle could get no access to view the

17  discovery."  *Id*.  Finally, he notes that the quantity of discovery was increased in August by an

18  additional 26 CDs and five computer hard drives, and that he is "greatly disadvantaged in his ability

19  to contribute to his defense by joining his lawyers in the review of the evidence that the government

20  has provided," a disadvantage that would be eliminated if he were just released.  *Id*. at 5-6.

21         Information provided by the detention facility, however, paints a very different picture—one

22  of a detainee who has not taken advantage of his opportunities to utilize the resources available to

23  him.  The government offers an email from the U.S. Marshals Service Detention Management

24  Inspector that states that, although Cecrle's detained co-defendant Wolfe has accessed the law library

25  on 130 occasions since May 2013, Cecrle "has not requested any access to the law library."  Doc.

26  151-1 at 2.  It also offers a document that purports to be an "Incident Statement" from Cecrle that

27  states, "I'm getting access to computer . . . . I did not file a motion about having access to courts."

28  Doc. 151-2 at 2.  Finally, the government provides a memo from Cecrle's unit manager at the facility

1  dated four weeks ago that represents that Cecrle "has stated that he does not have a problem with

2  access to the law library and mentioned . . . he signed a statement saying he does not have problems

3  with getting into the law library.  It is noted that [he] has accessed the library twice in the beginning

4  of the month for December.  The month of November the law library has been accessed by numerous

5  individuals however it does not reflect his name as having accessed the library.  The inmate is also

6  stating that several months ago he had approximately 48 discovery discs come into the facility and

7  does not know where they are.  We do not have any record of such discs coming into the facility.  At

8  this time one (1) disc is logged in and is accounted for in the case manager's office."  Doc. 151-3 at

9  2.

10          In response to the Court's request, the government inquired whether the detention facility

11 could afford Cecrle "up to 5 or 6 hours of terminal access per day, basing this number on

12 representations that he requires this amount of time to review discovery.  The answer is: yes.

13 According to representations made to the United States Marshals Service, the Detention center is

14 able to accommodate that level of computer terminal access, although demand during the day may

15 necessitate that the defendant use the terminal in the evenings.  At all events, however, it appears that

16 the Detention Center has sufficient resources to accommodate the defendant's anticipated level of

17 demand and will make those resources available to him."  Doc. 151 at 3.  The facility has also

18 represented that "defendant's discovery materials can be secured by his counselor and accessed upon

19 the defendant's request."  *Id*.

20          Neither the complexity of this case nor the limitations that pretrial incarceration places on

21 Cecrle's access to electronic copies of the government's discovery documents (many of which were

22 first made available to him a full year ago) justifies revocation or amendment of the detention order.

23 Heightened case complexity is not a basis for pretrial release.  *See United States v. Petters*, 2009 WL

24 205188, at *2 (D.Minn. Jan. 28, 2009) ("While this [fraud] case may, in fact, be complicated and

25 require Defendant to review hundreds if not thousands of documents and meet with his lawyers for

26 dozens of hours, that fact, standing alone, simply does not justify Defendant's release . . . .  Indeed,

27 accepting such an argument would mean that the more complicated the crime, the more likely a

28 defendant should be released prior to trial.  This is clearly an absurd result."); *United States v.*

8

1   *Birbragher*, 2008 WL 2246913 (N.D. Iowa May 29, 2008) (denying temporary release in "an

2   extremely complicated and document-intensive case").  And while the defendant's incarceration is

3   naturally inconvenient to him and his attorneys who must travel approximately 90 minutes each way

4   to work with him, even when considered in conjunction with the complexity of this case and the bulk

5   of documents contained in the discovery, trial-preparation inconvenience due to confinement is

6   common to all incarcerated defendants and does not justify release.  *See Dupree*, 833 F. Supp.2d at

7   249 (rejecting notion that detainee's pretrial release was necessary to prepare his defense "because

8   (1) [he] has had ample time to prepare for trial, with the government producing documents as early

9   as  . . . the day the original indictment was returned; (2) he can review large volumes of discovery

10  materials on DVDs at a computer in his unit of [the facility] or the library; (3) any inconvenience due

11  to [his] confinement, which is common to all incarcerated defendants, does not render his release

12  'necessary'"); *see also United States v. Stanford*, 722 F. Supp. 2d 803, 812–813 (S.D.Tx. 2010)

13  *aff'd*. 394 Fed. App'x. 72 (5th Cir. 2010) (noting that the defendant "once again contends that his

14  continued detention violates his Sixth Amendment right to prepare for trial with assistance of

15  counsel. The Court considered this argument once before, rejected it, and the Court's ruling was

16  affirmed by the Fifth Circuit.  Furthermore, the evidence before the Court makes it clear that

17  Stanford has had ample access to his attorneys and the discovery in this case from his place of

18  confinement.  His contrary contentions are unpersuasive given the evidence of the extent to which

19  the United States and the Federal Bureau of Prisons has accommodated all of his previous attorneys

20  and his needs to access the documents relative to his defense.") (internal citation omitted).  As

21  Cecrle is represented by appointed counsel, expense of preparation for trial does not weigh in favor

22  of his pretrial release.  Thus, the Court does not find that pretrial release is "necessary" for Defendant

23  Cecrle to assist in the preparation of his defense.

24

25   **2.    *Cecrle's Fifth and Sixth Amendment Arguments Do Not Justify Revocation or Amendment of the Pretrial Detention Order.***

26          Cecrle's constitutional arguments also fail to provide a compelling reason for pretrial release.

27  The premise of Cecrle's arguments is that "[a]ny restriction on his ability to review discovery, and

28  thereby assist his attorney, places an impermissible burden on Mr. Cecrle's Fifth Amendment right

1  of access to the courts, and his Sixth Amendment right to counsel." Doc. 122 at 3.  For this

2  proposition, Cecrle cites to the jurisprudence generally recognizing that institutional restrictions that

3  infringe on constitutional rights must be evaluated in light of the "central objective of prison

4  administration, safeguarding institutional security," *see* Doc. 112 at 3 (citing *Bell v. Wolfish*, 441

5  U.S. 520, 547 (1979)); and that the Sixth Amendment requires either appointment of counsel or that

6  *pro se* defendants be provided reasonable access to the prison law library.[5]  Cecrle is represented by

7  appointed counsel, and he is not complaining that he does not have access to legal research materials

8  but rather to his discovery materials that are electronically stored because they are voluminous and

9  thus require that he have significant access to the detention facility's computers to view them.

10        The "fundamental constitutional right of access to the courts, however, does not include a

11  constitutional right to a personal computer." *United States v. Neff*, 2013 WL 30650 at *6 (N.D. Tex.

12  Jan. 3, 2013) (cited by Cecrle in Doc. 122 at 3).  Nor does it require that access to materials be

13  provided in any particular way.  *See, e.g., Parkell v. Morgan*, 917 F. Supp. 2d 328, 335 (D. Del.

14  2013) (rejecting access-to-courts claim where it was "evident from plaintiffs allegations that he is

15  provided law library access, albeit not the type he desires.").  Indeed, a pretrial detainee's

16  constitutional right of access to the courts may be satisfied by maintenance of a law library *or* by

17  adequate assistance of counsel.[6]  *See, e.g., Lewis v. Casey,* 518 U.S. 343, 350-51 (1996) (prisoners

18  have no per se right to a law library); *Bounds v. Smith*, 430 U.S. 817, 828 (1977) (fundamental

19  constitutional right of access to the courts requires prison authorities to provide prisoners with

20  adequate law libraries or with adequate assistance from persons trained in the law); *Lindquist v.*

21  *Idaho State Bd. of Corrections,* 776 F.2d 851, 855 (9th Cir.1985) (prison must provide an adequate

22  _____

23        [5] Cecrle generally cites *United States v. Chatman*, 584 F.2d 1358 (4th Cir. 1978), for this
   proposition. *Chatman* stands for the Fourth Circuit's proposition that a criminal defendant who declines
24  appointed counsel has no right to access a law library.  *Chatman*, 584 F.2d at 1360 ("the United States
   satisfied its obligation under the sixth amendment when it offered defendant the assistance of counsel
25  which he declined."); *see also United States v. Sarno*, 73 F.3d 1470, 1491 (9th Cir. 1995) ("We agree
   that the Sixth Amendment demands that a pro se defendant who is incarcerated be afforded reasonable
26  access to 'law books, witnesses, or other tools to prepare a defense.'") (quoting *Milton v. Morris*, 767
   F.2d 1443, 1446 (9th Cir. 1985)).  Cecrle is represented by counsel, so this principle has no relevance
27  here.

28        [6] Importantly, Cecrle does not contend that he has been precluded from access to his counsel, just
   access to the electronically stored discovery documents and the computer that is required to view it.

law library or, in the alternative, adequate assistance from persons trained in the law); *United States v. Wilson*, 690 F.2d 1267, 1272 (9th Cir. 1982) (the offer of court-appointed counsel satisfies the Fifth Amendment obligation to provide meaningful access to the courts, even where detainee is denied pretrial access to a law library).

While Cecrle has not demonstrated that the current conditions at the detention facility prevent him from adequately preparing for trial and thus make his pretrial release "necessary" for the preparation of his defense, the Court is asking the Nevada Southern Detention Center to arrange for additional accommodations to ensure Cecrle has reasonable access to his discovery materials. *See Dupree*, 833 F. Supp. 2d at 250 (deeming court's request that the detention center allow increased access to counsel, computers, and electronically stored evidentiary materials an "appropriate remedy" for defense-preparation concerns and collecting authority for the proposition that pretrial release is not "necessary" for preparation of defense in a complex matter). *See also United States v. Janis*, 820 F. Supp. 512, 515 (S. D. Cal. 1992), *aff'd* 46 F.3d 1147 (9th Cir. 1995), cert den. 516 U.S. 860 (1995) (ordering that the detention center provide detainee with "at least two hours of library time five days per week if [he] requests such time" and additional time leading up to his motion and trial dates); *Neff*, 2013 WL 30650 at *6 ("Given the nature of the charges, the voluminous discovery, and the complexity of this case, the court believes the number of hours per day of access to electronic discovery should be increased to seven hours, from the normal five hours, and the court will order FCI Seagoville to make this adjustment solely for the purposes of this case. If the increase in hours presents a problem with respect to prison administration or internal security at FCI Seagoville, the warden or other person acting in the warden's capacity shall promptly notify the court and state with specificity the problem that the increase in hours causes FCI Seagoville."); *United States v. Petters*, 2009 WL 205188 (D. Minn. Jan. 28, 2009) ("Defendant has made little, if any, showing that his defense is being prejudiced by his continued detention. The Government has represented that it has made special arrangements with the Sherburne County Jail, where Defendant is currently being housed, to permit his counsel to meet with him seven days per week, from 8 a.m. until 10 p.m., with certain limited exceptions (meal times, a one-hour jail headcount, etc.). The Jail also has set up a dedicated conference room for defense counsel to meet with him, into which a

laptop computer may be brought.  In addition, Defendant is permitted to retain documents in his cell overnight."); *United States v. Stanford*, 722 F. Supp. 2d 803, 812 (S.D. Tex. 2010) *aff'd*, 394 F. App'x 72 (5th Cir. 2010) (release not necessary where "detention center granted defendants request to allow his legal team to enter the detention center with a laptop computer, external hard drive, and printer during each legal visit.").

The government has represented that the detention center will allow Cecrle "up to 5 or 6 hours of terminal access per day," which is the number of hours requested by defense counsel at the hearing.  "Defendant's discovery materials can be secured by his counselor and accessed upon the defendant's request."  Doc. 151 at 3.  These accommodations should be an appropriate remedy for ensuring that Cecrle has a reasonable opportunity to assist his counsel in the preparation of his defense.  Accordingly, the Court requests that, effective immediately, the Nevada Southern Detention Center (1) allow detainee Thomas Cecrle personal use of a properly working computer for six hours each day on a reasonable schedule to be determined by the Warden or another representative designated by the Warden, to review legal and evidentiary materials provided to him by his counsel; and (2) arrange for Cecrle's counselor or case manager to receive from Cecrle's counsel all evidentiary items (which should include, e.g., CDs, DVDs, hard drives, and paper documents), safeguard them from loss, and provide these materials to Mr. Cecrle, upon his request.  These accommodations shall be subject, of course, to all reasonable procedures and limitations necessary to ensure the safety of the facility or to address other reasonable institutional concerns.  The Court emphasizes that these accommodations are of limited duration and only for this case and this detainee.

### III.

### ORDER

Accordingly, and for all the foregoing reasons, IT IS HEREBY ORDERED that Cecrle's Motion to Revoke the Detention Order and Set Bond, in Light of Changed Circumstances **[#115] is DENIED**;

IT IS FURTHER ORDERED THAT effective immediately, the Nevada Southern Detention Center shall:

(1)  Provide detainee Thomas Cecrle personal use of a properly working computer for no less than six hours each day on a reasonable schedule to be determined by the Warden or another representative designated by the Warden, for the exclusive purpose of viewing legal and evidentiary materials provided to him by his counsel; and

(2)  Arrange for Cecrle's counselor or case manager to receive from Cecrle's counsel all evidentiary items (which include, e.g., CDs, DVDs, hard drives, and paper documents), safeguard them from loss, and provide these materials to Mr. Cecrle, upon his request.

These accommodations shall be subject, of course, to all reasonable procedures and limitations necessary to ensure the safety of the facility, staff, and other detaineess, or to address other reasonable institutional concerns.

IT IS FURTHER ORDERED THAT Defendant Cecrle's counsel shall communicate with the Nevada Southern Detention Center to make arrangements for copies of discovery to be provided to, and secured and maintained by, the case manager/counselor and provided to Mr. Cecrle as set forth above.

IT IS FURTHER ORDERED THAT the government shall immediately serve a copy of this order on Warden Charlotte Collins of the Nevada Southern Detention Center, and also upon Unit Manager S. Connors and Assistant Warden Dickens. *See* Doc. 151-3 at 2.  If the above accommodations cannot be made or present a problem at the detention facility, the Court requests that the Warden or the Warden's designee immediately notify the Court and counsel for the government and for Defendant Cecrle.

DATED January 3, 2014.

Jennifer A. Dorsey
United States District Judge