Daniel G. Bogden
United States Attorney
Steven W. Myhre
First Assistant United States Attorney
Daniel R. Schiess
Assistant United States Attorney
333 Las Vegas Boulevard, Suite 5000
Las Vegas, Nevada 89101
(702)388-6336

Attorneys for Plaintiff
United States of America

```
____ FILED        ____ RECEIVED
____ ENTERED      ____ SERVED ON
                  COUNSEL/PARTIES OF RECORD

      SEP 1 7 2014

  CLERK US DISTRICT COURT
    DISTRICT OF NEVADA
BY:_____ DEPUTY
```

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**United States of America**,

        Plaintiff,

v.

**Thomas A. Cecrle, Jr.**,

        Defendant.

2:12-cr-400-JAD-GWF

**Plea Agreement**

The United States, by and through Daniel G. Bogden, United States Attorney, and Steven W. Myhre, First Assistant United States Attorney, and Daniel R. Schiess, Assistant United States Attorney, the defendant Thomas A. Cecrle, Jr., and his attorney, William C. Carrico, submit this Plea Agreement under Fed. R. Crim. P. 11(c)(1)(A) and (B).

**I.    SCOPE OF AGREEMENT**

The parties to this Plea Agreement are the United States of America and Thomas A. Cecrle, Jr. This Plea Agreement binds the defendant and the United States Attorney's Office for the District of Nevada. It does not bind any other

1

prosecuting, administrative, or regulatory authority, the United States Probation Office, or the Court.

The Plea Agreement sets forth the parties' agreement regarding criminal charges referenced in the Plea Agreement and applicable sentences, fines, restitution and forfeiture. It does not control or prohibit the United States or any agency or third party from seeking any other civil or administrative remedies directly or indirectly against the defendant.

## II. DISPOSITION OF CHARGES AND WAIVER OF TRIAL RIGHTS

A. <u>Guilty Plea</u>. The defendant knowingly and voluntarily agrees to plead guilty to Count One of the Indictment filed October 24, 2012, charging conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.

B. <u>Waiver of Trial Rights</u>. The defendant acknowledges that he has been advised and understands that by entering a plea of guilty he is waiving – that is, giving up – certain rights guaranteed to all defendants by the law and the Constitution of the United States. Specifically, the defendant is giving up:

1. The right to proceed to trial by jury on all charges, or to a trial by a judge if the defendant and the United States both agree;

2. The right to confront the witnesses against the defendant at such a trial, and to cross examine them;

3. The right to remain silent at such a trial, with assurance that his silence could not be used against him in any way;

4. The right to testify in his own defense at such a trial if he so chooses;

5. The right to compel witnesses to appear at such a trial and testify in the defendant's behalf; and

6. The right to have the assistance of an attorney at all stages of such proceedings.

2

C. <u>Withdrawal of Guilty Plea</u>. The defendant will not seek to withdraw his guilty plea after he has entered it in court.

D. <u>Additional Charges</u>. The United States agrees not to bring any additional charges against the defendant arising out of the investigation in the District of Nevada which culminated in this Plea Agreement and based on conduct known to the United States, except that the United States reserves the right to prosecute the defendant for any crime of violence as defined by 18 U.S.C. § 16.

## III. ELEMENTS OF THE OFFENSE

A. The essential elements of Count One, Conspiracy to Commit Wire fraud, in violation of Title 18, United States Code, Section 1349, are as follows:

First: From in or about September 2002, to in or about October 2012, there was an agreement between two or more persons to commit the crime of wire fraud, in violation of Title 18, United States Code, Section 1343; and

Second: During the dates set forth above, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

See Ninth Circuit Manual of Model Jury Instruction, Criminal 8.20 (2010 ed.) (modified for 18 U.S.C. § 1349 by eliminating the element requiring proof of an overt act).

B. The essential elements of Wire Fraud, in violation of Title 18, United States Code, Section 1343, are as follows:

First: The defendant knowingly devised, intended to devise, or participated in a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

3

| | | |
|---|---|---|
| Second: | The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; |
| Third, | the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and |
| Fourth, | the defendant used or caused to be used interstate wire communications to carry out an essential part of the scheme. |

See Ninth Circuit Manual of Model Jury Instructions, Criminal 8.121 and 1.124 (2010 ed.).

## IV. FACTS SUPPORTING GUILTY PLEA

A. The defendant will plead guilty because he is, in fact and under the law, guilty of the crime charged.

B. The defendant acknowledges that if he elected to go to trial instead of pleading guilty, the United States could prove his guilt beyond a reasonable doubt and establish its right to the forfeiture money judgment. The defendant further acknowledges that his admissions and declarations of fact set forth below satisfy every element of the charged offense.

C. The defendant waives any potential future claim that the facts he admitted in this Plea Agreement were insufficient to satisfy the elements of the charged offense.

D. The defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

   1. From in or about September 2002, to in or about October 2012, defendants Cecrle, Jones, Fenton, Wolfe, Hansen, Martin, and others conspired to devise and execute a scheme or artifice to defraud and for obtaining money or

for others; (4) the project was near completion and Cecrle had an immediate need for a short-term cash loan to complete it; and (5) when the project was completed and within a very short time, Cecrle would repay the loans together with an enormous return.

5. Cecrle caused co-conspirators to solicit money on his behalf, repeating these same false representations over and over again to numerous investors for several years, asking the victims to deposit odd sums of cash on short notice into accounts owned and controlled by one of the co-conspirators. The conspirators never provided the victims with receipts for the money they "invested" nor provided them with any documentation describing the investment or the terms under which the money was "invested." Throughout the duration of the conspiracy, none of the victims ever received the return of their principal or any return on their investment. Instead, Cecrle and his co-conspirators fed the victims with a steady stream of false excuses designed to lull investors into complacency as to why they did not receive their money as promised. For example, in 2009, Cecrle caused defendant Wolfe to tell one victim that the water rights deal failed to pay out because Cecrle had left his wallet at a restaurant and therefore could not prove who he was in order to "close" the deal. Wolfe told the investor that the deal would nevertheless close "on Saturday." Notwithstanding these representations, the investor never received any money.

6. As a further part of the scheme and conspiracy, Cecrle also caused co-conspirators to: (1) solicit and/or receive money from investors in odd amounts and at non-scheduled odd times; (2) engage in commercially unusual and unreasonable transactions in connection with the water rights investment; (3) promise investors that the water rights investment would fund, or payout, shortly after investors paid money into it, even though he knew they never did and never would; and (4) knowing that in June 2009, federal law enforcement agents had

executed a search warrant on co-defendant Fenton's residence, caused co-conspirators to continue to represent to investors that the investment was legitimate.

7. At all times relevant, co-conspirator Jones was a public official in the State of Nevada, having been duly-elected to the position of Judge, Nevada Eighth Judicial District Court, Family Division.

8. As a further part of the scheme and conspiracy, defendants Cecrle, Jones, and his co-conspirators, knowingly used Jones's name, title, and office in connection with the fake projects, in part as follows:

    a. At various times throughout the conspiracy, the conspirators knowingly used and associated Jones' name and title with Cecrle, and thereby with the fake projects, as a means to vouch for Cecrle's credibility and to lull the investors into a false sense of security that the projects were legitimate.

    b. In March 2006, Cecrle had Jones use his office as a Judge to knowingly assist defendant Cecrle in obtaining an "Own Recognizance" release from custody following Cecrle's arrest on state charges for bad checks he wrote to repay a victim of the scheme;

    c. From March 2006 to June 2009, Cecrle relied on Jones to falsely tell at least one victim who knew that Jones was a judge and was using that fact to assess the credibility and legitimacy of Cecrle that Cecrle was involved in a lucrative project, that he (Jones) would help Cecrle complete the project in any way he could, and that Cecrle was difficult to reach because he was traveling in connection with the project.

    d. From at least March 2006 to November 2008, Jones met with at least one victim on numerous and diverse occasions in chambers and elsewhere within the Family Division courthouse to discuss the payment of money to defendant Cecrle in connection with the water project when Cecrle and Jones

knew the victim was relying on Jones' representations and his position as a judge to assess the legitimacy of the project.

   e. Between February and June 2007, while Cecrle was incarcerated, Jones, wearing his judicial robe, receive an in-person cash payment in the parking lot of the Family Division courthouse, when Jones and Cecrle knew that the money Jones received was from a victim for the purpose investing in the water project and that the person making the payment relied on Jones' position as a judge to assess the credibility and legitimacy of the project.

   f. From December 2006 to about March 2008, Cecrle and Jones established and maintained a joint checking account which they used to receive and disburse over $260,000 in proceeds from the fraudulent investment scheme, in over 1,000 transactions.

  9. As a further part of the scheme and conspiracy to defraud, the conspirators made, or caused to be made, interstate electronic communications, including an email defendant sent on or about December 13, 2007, to victim C.D., containing a document entitled Settlement Agreement and Mutual Release, relating to the fraudulent water rights investment.

  10. As a result of the scheme and conspiracy, at least 22 victims were defrauded of an amount in excess of $2.6 million.

## V. COLLATERAL USE OF FACTUAL ADMISSIONS

The facts set forth in Section IV of this Plea Agreement shall be admissible against the defendant under Fed. R. Evid. 801(d)(2)(A) at sentencing for any purpose. If the defendant does not plead guilty or withdraws his guilty plea, the facts set forth in Section IV of this Plea Agreement shall be admissible at any proceeding, including a trial, for impeaching or rebutting any evidence, argument or representation offered by or on the defendant's behalf. The defendant expressly

waives all rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 regarding the use of the facts set forth in Section IV of this Plea Agreement.

VI. **APPLICATION OF SENTENCING GUIDELINES PROVISIONS**

A. <u>Discretionary Nature of Sentencing Guidelines</u>. The defendant acknowledges that the Court must consider the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") in determining the defendant's sentence, but that the Sentencing Guidelines are advisory, not mandatory, and the Court has discretion to impose any reasonable sentence up to the maximum term of imprisonment permitted by statute.

B. <u>Offense Level Calculations</u>. The parties stipulate to the following calculation of the defendant's offense level under the Sentencing Guidelines, acknowledge that these stipulations do not bind the Court, and agree that they will not seek to apply any other specific offense characteristics, enhancements or reductions:

| | |
|---|---|
| Base Offense Level (USSG § 2B1.1(a)(1)): | 7 |
| Loss Amount: $2.5M to $7M (USSG §2B1.1(b)(1)(J)): | 18 |
| More than 10 but less than 50 victims (USSG §2B1.1(b)(2)(A)) | 2 |
| Sophisticated Means (USSG §2B1.1(b)(10)(C)) | 2 |
| Organizer and Leader of more than 5 Participants (USSG §3B1.1(a)): | 4 |
| Acceptance of Responsibility (USSG §3E1.1(a),(b)) | (3) |
| Group Plea | (2) |
| Total | <u>28</u> |

The defendant acknowledges that the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the

9

defendant's sentence notwithstanding any applicable Sentencing Guidelines provisions.

The two-level reduction for "Group Plea" is contingent upon, and only applicable in, the event that on or before the defendant is sentenced in this case, each of the defendants named in the Indictment enters a plea of guilty to one or more of the counts charged therein.

C. <u>Reduction of Offense Level for Acceptance of Responsibility</u>. Under USSG §3E1.1(a), the United States will recommend that the defendant receive a two-level downward adjustment for acceptance of responsibility unless he (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when he enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when he enters his guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when he enters his guilty plea; (d) provides false or misleading information to the United States, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding his involvement or falsely denies or frivolously contests conduct relevant to the offense; (f) attempts to withdraw his guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

Under USSG §3E1.1(b), the United States will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because the defendant communicated his decision to plead guilty in a timely manner that enabled the United States to avoid preparing for trial and to efficiently allocate its resources.

These Sentencing Guidelines provisions, if applied, will result in a total adjusted offense level of 28, as stated above.

D. <u>Criminal History Category</u>. The defendant acknowledges that the Court may base his sentence in part on his criminal record or criminal history. The Court will determine the defendant's Criminal History Category under the Sentencing Guidelines.

E. <u>Relevant Conduct</u>. The Court may consider, and the government may present, any and all relevant conduct, whether charged or uncharged, in determining the applicable Sentencing Guidelines range and whether to depart from that range.

F. <u>Additional Sentencing Information</u>. The stipulated Sentencing Guidelines calculations are based on information now known to the parties. The parties may provide additional information to the United States Probation Office and the Court regarding the nature, scope, and extent of the defendant's criminal conduct and any aggravating or mitigating facts or circumstances. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for the defendant to withdraw his guilty plea.

The defendant acknowledges that the United States Probation Office may calculate the Sentencing Guidelines differently and may rely on additional information it obtains through its investigation. The defendant also acknowledges that the Court may rely on this and other additional information as it calculates the Sentencing Guidelines range and makes other sentencing determinations, and the Court's reliance on such information shall not be grounds for the defendant to withdraw his guilty plea.

VII. **APPLICATION OF SENTENCING STATUTES**

A. <u>Maximum Penalty</u>. The maximum penalty for conspiracy to commit wire fraud under 18 U.S.C. § 1349 is a 20-year prison sentence, a fine of $250,000, or both.

11

B. <u>Factors Under 18 U.S.C. § 3553</u>. The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining the defendant's sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the Court's discretion in determining the defendant's sentence.

C. <u>Parole Abolished</u>. The defendant acknowledges that his prison sentence cannot be shortened by early release on parole because parole has been abolished.

D. <u>Supervised Release</u>. In addition to imprisonment and a fine, the defendant will be subject to a term of supervised release not greater than ~~three (3)~~ five (5) years. 18 U.S.C. § 3583(b)(1). Supervised release is a period of time after release from prison during which the defendant will be subject to various restrictions and requirements. If the defendant violates any condition of supervised release, the Court may order the defendant's return to prison for all or part of the term of supervised release, which could result in the defendant serving a total term of imprisonment greater than the statutory maximum prison sentence of 20 years.

E. <u>Special Assessment</u>. The defendant will pay a $100 special assessment at the time of sentencing.

**VIII. POSITIONS REGARDING SENTENCE**

The defendant reserves the right to argue for a sentence that is below the Sentencing Guidelines range (as calculated in this Plea Agreement) pursuant to the factors set forth in 18 U.S.C. § 3553(a).

Further, the United States will recommend that the defendant be sentenced to the low-end of the applicable Sentencing Guidelines range as determined by the Court, unless: (a) the defendant commits any act that could result in a loss of the downward adjustment for acceptance of responsibility; or (b) the defendant argues for a non-custodial sentence under 18 U.S.C. § 3553(a). In the event the defendant argues for a non-custodial sentence, the government is bound only to recommend a

sentence within the Sentencing Guidelines range as calculated in this Plea Agreement.

Notwithstanding its agreement to recommend a sentence within the applicable range, the United States reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation. The defendant acknowledges that the Court does not have to follow the government's or the defendant's recommendation as to his sentence.

## IX. RESTITUTION

In exchange for benefits received under this Plea Agreement, the defendant agrees to pay restitution in an amount as determined by the Court, jointly and severally with all co-defendants. The defendant cannot discharge his restitution obligation through bankruptcy proceedings. The defendant acknowledges that restitution payments and obligations cannot offset or reduce the amount of any forfeiture judgment imposed in this case.

## X. FORFEITURE

In consideration of the terms as set forth in this Plea Agreement, the government agrees not to seek forfeiture against the defendant for any offenses arising out of the investigation that led to the instant plea provided all other terms and conditions of this agreement remain in force.

## XI. FINANCIAL INFORMATION AND DISPOSITION OF ASSETS

Before or after sentencing, upon request by the Court, the United States, or the Probation Office, the defendant will provide accurate and complete financial information, submit sworn statements, and/or give depositions under oath concerning his assets and his ability to pay. The defendant will surrender assets he obtained directly or indirectly as a result of his crimes, and will release funds and property under his control in order to pay any fine or restitution ordered by the Court.

## XII. THE DEFENDANT'S ACKNOWLEDGMENTS AND WAIVERS

A. <u>Plea Agreement and Decision to Plead Guilty</u>. The defendant acknowledges that:

1. He has read this Plea Agreement and understands its terms and conditions;

2. He has had adequate time to discuss this case, the evidence, and this Plea Agreement with his attorney;

3. He has discussed the terms of this Plea Agreement with his attorney;

4. The representations contained in this Plea Agreement are true and correct, including the facts set forth in Section IV; and

5. He was not under the influence of any alcohol, drug, or medicine that would impair his ability to understand the Agreement when he considered signing this Plea Agreement and when he signed it.

The defendant understands that he alone decides whether to plead guilty or go to trial, and acknowledges that he has decided to enter his guilty plea knowing of the charges brought against him, his possible defenses, and the benefits and possible detriments of proceeding to trial. The defendant also acknowledges that he decided to plead guilty voluntarily and that no one coerced or threatened him to enter into this Plea Agreement.

B. <u>Waiver of Appeal and Post-Conviction Proceedings</u>. The defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the Court; (b) the right to appeal the manner in which the Court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction or sentence and any order of restitution or forfeiture.

The defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

The defendant reserves only the right to appeal any portion of the sentence that is an upward departure from the Sentencing Guidelines range determined by the Court.

The defendant acknowledges that the United States is not obligated or required to preserve any evidence obtained in the investigation of this case.

C. <u>Removal/Deportation Consequences</u>. The defendant understands and acknowledges that if he is not a United States citizen, then it is highly probable that he will be permanently removed (deported) from the United States as a consequence of pleading guilty under the terms of this Plea Agreement. The defendant has also been advised if his conviction is for an offense described in 8 U.S.C. § 1101(a)(43), he will be deported and removed from the United States and will not be allowed to return to the United States at any time in the future. The defendant desires to plead guilty regardless of any immigration consequences that may result from his guilty plea, even if the consequence is automatic removal from the United States with no possibility of returning. The defendant acknowledges that he has specifically discussed these removal/deportation consequences with his attorney.

## XIII. ADDITIONAL ACKNOWLEDGMENTS

This Plea Agreement resulted from an arms-length negotiation in which both parties bargained for and received valuable benefits in exchange for valuable concessions. It constitutes the entire agreement negotiated and agreed to by the parties. No promises, agreements or conditions other than those set forth in this agreement have been made or implied by the defendant, the defendant's attorney, or the United States, and no additional promises, agreements or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the Court.

DANIEL G. BOGDEN
United States Attorney

9/4/14
DATE

Steven W. Myhre
First Assistant United States Attorney
Daniel R. Schiess
Assistant United States Attorney

September 3, 2014
DATE

William C. Carrico
Counsel for Defendant

9-3-14
DATE

Thomas A. Cecrle, Jr.
Defendant